UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:16-CV-21110-KMW

LEXI NORTH BAY LLC, a Florida
limited liability company

                Movant,

v.

LEXI DEVELOPMENT COMPANY, INC.,
a Florida Corporation; and NBV LOAN
ACQUISITION, LLC,

                Respondents          /

In re:                                                               Case No. 10-27573-AJC
                                                                     Chapter 11
LEXI DEVELOPMENT COMPANY, INC.,
Case No. 10-27573-AJC

                Debtor.              /
LEXI DEVELOPMENT COMPANY, INC.              Adv. Pro. No. 10-03582-AJC

a Florida corporation,

                Plaintiff,

v.

LEXI NORTH BAY LLC, a Florida
limited liability company, and GREAT
FLORIDA BANK, a Florida banking
Corporation,

                Defendants.          /
GREAT FLORIDA BANK, a Florida banking
Corporation,

                Cross-Plaintiff,

v.

LEXI NORTH BAY LLC, a Florida limited
liability company,

                Cross-Defendant.      /

### DEBTOR'S RESPONSE IN OPPOSITION TO LEXI NORTH BAY LLC'S MOTION FOR STAY PURSUANT TO RULE 5011

Lexi Development Company, Inc., chapter 11 debtor-in-possession (*"Debtor"*), by and through undersigned counsel, files this response in opposition to Lexi North Bay LLC's ("***North Bay***") *Motion for Stay Pursuant to Rule 5011* (the "***Motion***") " [ECF No. 1] and states:

### Preliminary Statement

In its Motion for Stay, North Bay has failed to meet its burden to show cause for this Court to stay the Bankruptcy Court proceedings pursuant to Fed. R. Bankr. P. 5011 for the following reasons: North Bay has failed to meet its burden to establish how it can succeed on the merits of its Motion to Withdraw the Reference because (i) the Motion is grossly untimely, (ii) North Bay has failed to show any cause for withdrawing the reference, (iii) North Bay has *already admitted* the adversary proceeding and crossclaims are core proceedings (and they are pursuant to 28 U.S.C. 157(b)) and (iv) the Motion, as well as the Motion to Withdraw the Reference are predicated on a fear of what the Bankruptcy Court *may* do, not what it has done.

With respect to the bases for the Motion to Withdraw the Reference, first and foremost, the Motion as well as the Motion to Withdraw the Reference are grossly untimely, and for that basis alone the Motion should be denied. North Bay had ample opportunities during the course of the adversary proceeding to move to withdraw the reference, but failed to do so until 3 days prior to the commencement of the trial before the Bankruptcy Court. Moreover, North Bay has previously admitted that the matters to be determined are core, and this admission was justified, as it is in line with the clear language of 28 U.S.C. 157(b).

The ulterior motive of North Bay in filing its Motion to Withdraw the Reference should be what this Court focuses upon. It is clear North Bay is asking this Court to; in essence, to issue

2

an advisory opinion that the Bankruptcy Court (a judge with literally decades of experience on the bench) cannot be trusted to do its job and that the Bankruptcy Court *will* violate the mandate rule. However, this Court made clear in its July 14, 2015 Order denying North Bay's Motion for an Interlocutory Appeal that it has "every confidence" that the Bankruptcy Court will properly apply the mandate rule.

The Court's confidence has not been misplaced. There is nothing in the record of the adversary proceeding to suggest that the Bankruptcy Court has, or intends to, violate the mandate rule. To the contrary, the Bankruptcy Court has acted in a manner consistent with its Case Management Order ("*CMO*") which was the subject of North Bay's motion for interlocutory appeal and which this Court denied.

North Bay cannot show it will be irreparably harmed, because it retains its appellate rights should the Bankruptcy Court rule against North Bay at the conclusion of trial. Whether an appeal of this matter results in a retrial or remand is unlikely and is by no means certain. Anticipating that potential with any degree of accuracy is not possible nor is it an appropriate basis to withdraw the reference. This case must be tried to finality which the Bankruptcy Court has already started and will finish.

Conversely, the Debtor *will* suffer substantial harm because it has already prepared for and commenced trial, taken testimony from a witness, and its remaining witnesses have already arranged their schedules around the previously scheduled trial dates. The Debtor has waited years to try this case and any further delay would harm the Debtor.

Finally, North Bay has failed to show the public interest will not be harmed by granting the stay. Indeed the contrary is true – it is not in the public interest for this Court to take the unprecedented step of withdrawing the reference after trial has already commenced, based on

3

what amounts to a defendant fearing that the Bankruptcy Court *may* violate the mandate rule, especially since the Bankruptcy Court has done no such thing, and after this Court expressed its confidence that the Bankruptcy Court would properly apply the mandate rule. Accordingly, for the reasons set forth herein, the Court should deny the relief requested.

## ARGUMENT IN OPPOSITION

### I. STANDARD FOR STAY OF PROCEEDING PURSUANT TO FED. R. BANKR. P. 5011

1. Federal Rule of Bankruptcy Procedure ("**Fed. R. Bankr. P.**") 5011(c) provides that the filing of a motion for withdrawal of the reference "shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge *may* stay, on such terms and conditions as are proper, proceedings pending disposition of the motion." Fed. R. Bankr. P. 5011(c) (emphasis added).

2. In order to rebut the mandate of Fed. R. Bankr. P. 5011(c), the party requesting a stay has the burden to prove that a stay would be proper. *In re Northwestern Institute of Psychiatry, Inc*., 268 B.R. 79, 83 (Bankr. E.D. Pa. 2001); *In re Eagle Enterprises, Inc*., 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001).

3. "Although BR 5011(c) provides little guidance as to the circumstances under which a bankruptcy court should stay a proceeding, it is clear from the plain language of the Rule that the granting of a stay should be the exception—not the general rule." *In re The Antioch Co*., 435 B.R. 493, 496 (Bankr. S.D. Ohio 2010). The Antioch court further observed:

> While the term "may" in the Rule appears to grant the bankruptcy court broad discretion in determining such a motion, the case law applying the Rule has limited the circumstances under which a stay may be granted to essentially the circumstances under which a preliminary injunction would be appropriate under Federal Rule of Civil Procedure 65.

*Id*. at 497.

4. In order to obtain a stay of proceedings pursuant to Fed. R. Bankr. P. 5011, the movant must show: (i) the likelihood of success on the merits of the [motion to withdraw the reference]; (ii) the movant will suffer irreparable injury if the stay is denied; (iii) the non-moving party will not be substantially harmed if the stay is granted; and (iv) the public interest will not be harmed by granting the stay. See *In re Lykes Bros. S.S. Co., Inc.*, 221 B.R. 881, 884 (Bankr. M.D. Fla. 1997). The movant bears the burden of proof on all four factors, and the failure to meet the burden of proof on any of the four factors mandates the motion be denied. *See In re Section 20 Land Group*, 252 B.R. 819, 821 (Bankr. M.D. Fla. 2000) (failure to satisfy even one prong of the standard justifies denial of a stay); *In re Lykes Bros. S.S. Co., Inc.*, 221 B.R. at 884. *In re Bob Hamilton Real Estate, Inc.*, 164 B.R. 703 (Bankr. M.D. Fla. 1994); *In re Charter Co.*, 72 B.R. 70, 71-72 (Bankr. M.D. Fla. 1987). A movant must establish each and every one of the four elements in order to obtain a stay. *Charter Co.*, 72 B.R. at 72.

5. North Bay has failed to show that it has met any, much less *all* of the requirements for a stay pursuant to Fed. R. Bankr. P. 5011. Instead, it appears North Bay is attempting to revive its interlocutory appeal which this Court already denied, and is engaging in rank judge/forum shopping because it apparently believes this Court will be more sympathetic to its case than the Bankruptcy Court. However, motions to withdraw the reference should not be used as an "escape hatch" to get out of bankruptcy court. *See Hvide Marine Towing, Inc. v. Kimbrell* (*In re Hvide Marine Towing, Inc.*), 248 B.R. 841, 844 (M.D. Fla. 2000) (*quoting In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986)).

## II.   NORTH BAY HAS NOT SHOWN IT CAN SUCCEED ON THE MERITS OF THE MOTION TO WITHDRAW THE REFERENCE

### A.   North Bay's Motion to Withdraw the Reference is Untimely

6.     The threshold question in evaluating a motion to withdraw the reference under § 157(d) is whether plaintiff's motion ... was made in a timely manner." *In re Global Energies, LLC*, No. 11–61322–CIV, 2011 WL 2610209, at *3 (S.D.Fla. July 1, 2011) (citation omitted); *see also In re Securities Grp.1980*, 89 B.R. 192, 194 (M.D.Fla.1988) ("A threshold issue in application of § 157(d) is the timeliness of the motion to withdraw the reference."). "For gauging timeliness, the key issue is when the moving party was first aware non-bankruptcy federal laws must be dealt with in resolving the case." *Id*. (citations omitted); *see also In re The VWE Grp., Inc*., 359 B.R. 441, 446 (S.D.N.Y.2007) (noting that there is "no specific time limit for applications under 28 U.S.C. § 157(d)," but the S.D.N.Y. has defined the term "timely" to mean "as soon as possible after the moving party has notice of the grounds for withdrawing the reference" (*quoting Lone Star Indus. v. Rankin County Economic Dev. Dist*. (*In re New York Trap Rock Corp*.), 158 B.R. 574, 577 (S.D.N.Y.1993); *Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp*. (*In re FMI Forwarding Co*.), No. 04 Civ. 630, 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005))); *Met-Al, Inc. v. Hanson Storage Co*., 157 B.R. 993 (E.D. Wis. 1993) (motion timely when filed five days after filing of amended complaint first alleging Federal statutory claim); *In re Oil Co*., 140 B.R. 30 (E.D.N.Y. 1992) (motion filed six weeks after proceeding commenced was timely). *See also*, *Central Illinois Sav. & Loan Assoc. v. Rittenberg Co., Ltd*. (*In re IQ Telecommunications, Inc*.), 70 B.R. 742, 746 (N.D. Ill. 1987) (denying motion to withdraw reference where defendants defended adversary proceeding

and attacked complaint in bankruptcy court for over one year before seeking withdrawal); *In re Giorgio*, 50 B.R. 327, 328-29 (D.R.I. 1985) (accord).

7. There is no question that North Bay's Motion (and the Motion to Withdraw the Reference) is untimely. North Bay has been aware of the bases it belatedly now articulates for withdrawing the reference for years. Nonetheless, North Bay serves up its "red herring" arguments related to certain cross-claims at issue in the adversary proceeding, pretending that North Bay miraculously became aware, approximately 3 days prior to commencement of trial, that the District Court should conduct (now continue) the trial on allegedly non-core matters. However, the cross claims North Bay references in its Motion add no new grounds for withdrawing the reference, and thus do not excuse North Bay's inexcusable delay in moving to withdraw the reference in a timely manner.

8. North Bay attempts to mislead the Court by arguing that the cross-claims at issue in the adversary proceeding somehow excuse its delay in bringing the Motion. However, as noted by the *IQ Telecommunications* court, if crossclaims do not add new grounds for withdrawing the reference, there is no basis to excuse an untimely motion to withdraw the reference:

> The Rittenberg defendants ostensibly base their motion on the trustee's crossclaim, which was not filed until November 27, 1985. However, *the crossclaim added no new grounds for withdrawing the reference*. It is *very similar to Central's adversary complaint, both legally and factually*. It seeks much of the same relief, and like Central's complaint it was filed on behalf of the debtor's estate. Under these circumstances, it is inappropriate to evaluate the timeliness of the Rittenberg defendants' motion to withdraw reference based solely on the trustees' crossclaim. Moreover even if it were appropriate to evaluate the timeliness issue on that basis, *the Rittenberg defendants filed their answers to the crossclaim in the bankruptcy court before they filed their motion to withdraw reference here*. In this case, the trustee's crossclaim does not change our conclusion that the Rittenberg defendants' motion is untimely.

*In re IQ Telecomms, Inc*. 70 B.R. at 746 (emphasis added).

9. Just as the defendants in *IQ Telecommunications, Inc.*, North Bay filed its answer to the cross claims in this case well before it filed its motion to withdraw the reference – in fact, North Bay filed its answer to the crossclaim of GFB *5 years ago*.

10. Even if we were to give North Bay the benefit of the doubt with respect to its understanding of the core/non-core nature of the crossclaims and what would be determined by the Bankruptcy Court when it filed its Answer to GFB's crossclaim in 2011, it certainly has had ample opportunity to move to withdraw the reference in a timely manner since that time. For example, North Bay could have moved to withdraw the reference on or after September 17, 2014, when this Court entered its Order [ECF No. 152] reversing the June 1, 2012 Final Judgment of the U.S. Bankruptcy Court in Adversary Case No. 10-03582 and pursuant to which the Court remanded the case for further consistent proceedings. The alleged core/non-core nature of the issues to be tried were certainly known or should have been known to North Bay at that time.

11. North Bay also could have moved to withdraw the reference on or after March 12, 2015, when the 11th Circuit dismissed the Debtor's appeal stating that the District Court's September 18, 2014 remand order afforded the Bankruptcy Court " . . . considerable discretion to make further liability determinations regarding actual and potential crossclaims."

12. Finally, North Bay could have moved to withdraw the reference after the Bankruptcy Court entered its CMO. Instead of moving to withdraw the reference, North Bay sought an interlocutory appeal which this Court denied on July 14, 2015 while expressing its confidence in the Bankruptcy Court's ability to follow the mandate rule.

13. Nothing has changed in the posture of case from July 2015 to the present, except that the trial has already commenced, and North Bay finally got around to filing its untimely motion to withdraw the reference 3 days before trial.

14. Here, North Bay has been aware of what it claims to be the core/non-core nature of the claims at issue in the adversary proceeding since 2010 when the adversary proceeding was first filed. North Bay could have raised the core/non-core issue then and at almost any point thereafter. However it chose not to do so until 3 days prior to trial, some 6 years after commencement of the adversary proceeding.

15. With respect to the instant Motion, North Bay did not have to await the Bankruptcy Court's written order denying its Motion for Stay before filing the present Motion with this Court. In simple terms, North Bay created the crisis for which it now expects expedited relief, and should not be rewarded for its lack of diligence.

16. Accordingly, North Bay has not (and cannot) show that it has any likelihood of prevailing on its Motion to Withdraw the Reference, as it is grossly untimely and should on that ground alone be denied. However, another reason North Bay will not prevail on its Motion to Withdraw the Reference is that North Bay has failed to show cause for withdrawing the reference.

      **B.**    **North Bay Fails to Show Cause for the Motion to Withdraw the Reference**

17. North Bay fails to show cause for the Court to withdraw the reference and therefore cannot show likelihood of success on the merits of the Motion to Withdraw the Reference.

18. 28 U.S.C. §157(b)(3) provides:

9

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.

28 U.S.C. §157(b).

19. The Eleventh Circuit has held that district courts may withdraw the reference only for cause once bankruptcy court has assumed jurisdiction. *Dionne v. Simmons* (*In re Simmons*), 200 F.3d 738, 741 (11th Cir. 2000). *See also, In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir.1991). "Although cause is not defined in the statute, this court has found that it is not an empty requirement." *See Simmons citing Parklane* at 536. (requiring cause must be shown for the district court to withdraw the reference under 28 U.S.C. § 157(d)).

20. As noted by the Court in *Parklane*:

> Although this Court has not yet articulated criteria for determining the existence of cause for withdrawal, other courts have. In Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir.1985), the Fifth Circuit noted in dicta that in determining whether cause existed **a district court should consider such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process**.

*Id*. at 998." (emphasis added).

21. More recently, the court in *In re Fundamental Long Term Care, Inc.*, 2014 WL 2882522 at *1 (M.D. Fla., Jun. 14, 2014) held:

> In determining whether a movant has established sufficient cause, the Court should consider the advancement of uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process. *Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 274 (M.D.Fla.2002). Other factors to be considered include: 1) whether the claim is core or non-core; 2) efficient use of judicial resources; 3) a jury demand; and 4) prevention of delay. Id. A demand for a jury trial in a non-core matter in itself may provide sufficient cause to withdraw the reference. *In re Dreis & Krump Mfg. Co.*, 1995 WL 41416, *3 (N.D.Ill.1/31/1995).

22. In fact, in another adversary proceeding in this case (Adv Pro. 10-03254-AJC), Debtor tried to consolidate North Bay's state court action against the guarantors of Debtor with this instant adversary proceeding. The Bankruptcy Court, in its *Order Granting Lexi North Bay LLC's Motion to Remand* [Adv. Pro. 10-03254, ECF No. 25] entered December 14, 2010, stated that the case against the non-debtor personal guarantors:

> [I]is not a core proceeding because there is no actual dispute in this particular matter regarding the extent, priority and validity of liens. That question is raised only in two other cases: the adversary proceeding commenced by the Debtor against Great Florida Bank and North Bay, and in a separate and not removed state court case commenced by Great Florida against North Bay.

*Id.* at ¶3.

23. The Order then includes a footnote which states *Lexi Dev. Co., Inc. v. Lexi North Bay, LLC et al.*, Adv. Case No. 10-03582 and *Great Florida Bank v. Lexi Dev. Co. et al.*, case No. 10-28467 CA 15 pending in the 11th Circuit in and for Miami-Dade County". Thus, the Bankruptcy Court issued an order in December of 2010 finding by negative inference that this instant adversary proceeding is a core matter for the specific reason that it is an action regarding the extent, validity and priority of liens.

**C. North Bay has Already Admitted the Adversary Proceeding is a Core Proceeding Because it is Pursuant to 28 U.S.C. 157(b)**

24. Another reason North Bay cannot show likelihood of success on its Motion to Withdraw the Reference is that it has already admitted the adversary proceeding is a core proceeding.

25. Specifically, in paragraph 2 of Debtor's *Complaint to Determine The Validity, Priority and Extent of Liens* (the "**Complaint**") [ECF No. 1], Debtor alleges "The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1334 and 28 U.S.C. 157. This is a <u>core proceeding</u> pursuant to 28 U.S.C 157(b)(2)(K)." (emphasis added).

11

26.     In North Bay's Answer and Affirmative Defenses [ECF No. 11], North Bay states in paragraph 2-7 "North Bay admits the allegations of Paragraph 2-7 of the Complaint". Thus, there is no question that North Bay admitted in its Answer, back in October of 2010, that the issues of the adversary proceeding are *core*.

27.     Great Florida Bank, in its Answer to Complaint and Cross-Claim Against Lexi North Bay, LLC [ECF No. 15], states in paragraph 2 of its cross claim "The court has subject matter jurisdiction pursuant to 28 U.S.C § 1334 and 28 U.S.C § 157. This is a core proceeding pursuant to 157(b)(2)(K).

28.     And again, in Lexi North Bay's, LLC's Answer to Cross-Claim, [ECF No. 51] North Bay states in its own paragraph 2 "North Bay admits the allegation of Paragraph 2 of the Cross-Claim."

29.     North Bay admitted the adversary proceeding is core because it is.

30.     28 USC 157(b)(2)(K) specifically states "Core matters include, but are not limited to, *determinations of the validity, extent or priority of liens*." (emphasis added). Indeed, 28 USC 157(b)(2)(K) is not the only provision of 28 U.S.C. § 157 that makes this adversary a core proceeding. 28 U.S.C. §157(b)(2) states:

31.     Core proceedings include, but are not limited to—

   (A) matters concerning the administration of the estate; (applies here because the determination of the extent validity and priority of North Bay's and NBV's claims will clearly concern the administration of this bankruptcy estate)

   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (applies here because the determination of the extent validity and priority of North Bay's

>and NBV's claims goes to the allowance or disallowance of such claims)
>
>(C) counterclaims by the estate against persons filing claims against the estate; (applies here as the adversary to be tried may be considered the Debtor's counterclaim against North Bay's proof of claim)
>
>(L) confirmation of plans; (applies here as the distribution scheme under the Debtor's plan is dependent upon the outcome of the trial of the adversary)
>
>(M) orders approving the use or lease of property, including the use of cash collateral; (applies here as the outcome of the trial of the adversary will impact the Debtor's use of what North Bay claims to be its cash collateral)
>
>(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and (applies here as the sale of the Debtor's real property assets will be impacted by the outcome of the trial of the adversary)
>
>(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. (applies here as the liquidation of the Debtor's real property assets will be impacted by the outcome of the trial of the adversary which by its very nature will adjust the debtor's relationship with North Bay and/or NBV)

28 U.S.C. § 157(b)(2).

32. These additional factors are clearly met with respect to the issues before the Bankruptcy Court in the adversary proceeding as well, and serve as another reason why North Bay cannot succeed on its Motion to Withdraw the Reference. For example, even if North Bay were correct that the remaining issues in this case relate to a contractual dispute between two non-debtors, the Debtor nonetheless has a compelling interest in the "priority" of liens in dispute. Accordingly, under any scenario, the adversary proceeding is a core proceeding.

### D.     North Bay's Motion is Predicated on Fear of What Bankruptcy Court *May* Do, Not What it has Done

33.     North Bay argues in its Motion that the Bankruptcy Court is "allowing" Debtor to make arguments that it believes are inconsistent with the mandate rule. Motion at p.3. In addition, in its Motion to Withdraw the Reference [ECF No. 303], North Bay argues "it has only recently become clear to North Bay that the Bankruptcy Court **intends** to proceed to conduct a trial on the issues in this Adversary in contravention of prior decisions of the U.S. District Court and the 11th Circuit." *Id*. at p. 5 (emphasis added). North Bay also argues in its Motion for Expedited Briefing [ECF No. 4]:

> The Debtor's calculated misrepresentations to the Bankruptcy Court **invite it** to violate the law of the case/mandate doctrine and preside over a matter in which the core bankruptcy issues have already been resolved.

Motion to Expedite Briefing at p.2 (emphasis added).

34.     These arguments are not only incorrect, they defame the Bankruptcy Court – suggesting that the Bankruptcy Court has "gone rogue" in defiance of this Court and the 11th Circuit. Nothing could be further from the truth, and the allegations are both disingenuous and inflammatory.

35.     The fact is the Bankruptcy Court has at every turn made clear it would be conducting a trial in accordance with, not in defiance of, this Court and the Eleventh Circuit. Specifically, the Bankruptcy Court, in its *Order on Motion for Case Management Conference* on June 4, 2015 (the "*CMO*") [ECF No. 172] analyzed the extent of the mandate given it by the Eleventh Circuit's Dismissal Order [ECF No. 157]. The Bankruptcy Court described in detail its intentions with respect to its "significant judicial activity involving considerable discretion" authorized by the Eleventh Circuit's Dismissal Order.

36.     Moreover, even if the Bankruptcy Court is "allowing" Debtor to make certain arguments, that is not the same as adopting and ruling in favor of such arguments. It is patronizing and offensive for North Bay to suggest the Bankruptcy Court is incapable of listening to argument and then ruling in a manner consistent with the mandate rule.

37.     This Court has also expressed its strong confidence that the Bankruptcy Court would, in fact, properly apply the mandate rule:

> The Court has **every confidence** that the bankruptcy court will properly apply the mandate rule in accordance with this Court's and the Eleventh Circuit's order.

Order at p. 5 [Case No. 1:15-cv-22307-KMW, ECF No. 9].

38.     Accordingly, the very basis for the Motion to Withdraw the Reference is improper, and on this basis alone the Motion should be denied.

### III.    NORTH BAY IS NOT IRREPARABLY HARMED IF THE STAY IS NOT GRANTED

39.     North Bay fails to show it will be irreparably harmed if the stay is not granted, and therefore the Motion should be denied on that basis as well as those already mentioned.

40.     In its Motion, North Bay argues its "irreparable harm" is that if the stay is denied, "it will be forced to re-try issues already decided and incur the risk of inconsistent results." Motion at ¶ 17. However, this excuse is meritless. In the first place, there has never been a trial on the merits in this case. The only issues addressed prior to trial were summary judgment issues. Accordingly, the only thing that will occur if the Bankruptcy Court rules against North Bay, is that North Bay will have a final record available for appeal. There will be no re-trying of any issue, and any perceived error on the part of the Bankruptcy Court's judgment can be addressed through the appellate process.

41.     If remand is appropriate, this Court will make that determination on appeal, as and if necessary, and the determination will be based on a complete record on appeal. In contrast, withdrawal of the reference at this stage would be unprecedented and would potentially lead to additional procedural complications, appeals and further delays.

42.     Accordingly, not only is there no "irreparable harm" to North Bay if the stay is not granted, there is no harm of any kind. Conversely, Debtor is harmed if the stay is granted.

## IV.     DEBTOR WILL BE SUBSTANTIALLY HARMED IF THE STAY IS GRANTED

43.     North Bay cannot prove that Debtor will not be substantially harmed if the stay is granted. *See In re Section 20 Land Group, Ltd*., 252 B.R. 819, 821 (M.D. Fla. 2000). In its Motion, North Bay argues that the only risk to Debtor and NBV is another delay. Not true.

44.     Debtor has already spent significant time and treasure preparing for and participating in trial – a trial for which the Debtor has waited for years.  Any further delay would be extremely prejudicial to Debtor, because, assuming this Court were to withdraw the reference, the parties would have to await however long it would take for this case to be placed on the Court's trial docket, not to mention the Debtor would have to re-prepare for trial. Contrast that circumstance with the present case where the Bankruptcy Court stands ready to continue trying this case on April 15, 2016 and again on April 20 – 22, 2016. Moreover, Debtor's remaining witnesses have made arrangements to be available for trial on the scheduled dates, and forcing them to cancel their travel and preparation planning does cause substantial harm to Debtor. Note that this factor of the requirements for granting stay do not require North Bay to show the Debtor will not suffer "irreparable" harm (as North Bay must show for itself), merely that Debtor will suffer no substantial "harm." Here, there is no question that a balancing of harms weighs in favor of Debtor, but the comparison is not equivalent – North Bay must show that it is "irreparably"

harmed should the stay not be granted, and that Debtor will not be "substantially" harmed if the stay is granted. North Bay cannot meet either requirement.

## V. GRANTING THE STAY WOULD CAUSE HARM TO THE PUBLIC INTEREST

45. In its Motion, North Bay suggests that the public interest is served because the Motion is founded on concerns that a "now non-core" proceeding should be withdrawn. Motion at ¶ 19. North Bay's simple conclusory statement falls far short of the requirement that North Bay meet its burden to "establish" that granting the stay will not cause harm to the public interest. *See In re Lykes Bros. Steamship Co., Inc*., 221 B.R. 881, 884 (Bankr.M.D.Fla.1997) (citations omitted); *see also Tooke v. Sunshine Trust Mort. Trust*, 149 B.R. 687, 689 (M.D.Fla.1992).

46. Notwithstanding North Bay's failure to even try to meet its burden, the converse is clearly true – great harm to the public interest will be caused by granting the stay. Were this Court to grant a motion to withdraw the reference based on a litigant's fear of what a bankruptcy court may rule, it would make a mockery of the entire purpose of the reference. This is because litigants, given such a precedent, would continually seek to withdraw the reference if they fear how a bankruptcy court will rule.

47. North Bay is, in effect, seeking an advisory opinion from this Court that the Bankruptcy Court *will* violate the mandate rule. Were the Court to grant the Motion under such circumstances, it would set a devastating precedent – suggesting that all a party need to avoid trial in a bankruptcy court on a remanded case is to claim that the mandate rule will be violated. Put differently, granting the Motion would give the green light to every disgruntled litigant shopping for a new judge to proceed with their Motion. Such a precedent would cause great harm to the public interest, and for that reason as well the Motion should be denied.

48. Finally, it is important to recall that "[t]he failure to satisfy one prong of the standard for granting a stay pending appeal justifies denial of the motion." *Tooke v. Sunshine Trust Mort. Trust*, 149 B.R. at 689.

## CONCLUSION

49. For the foregoing reasons, it is readily apparent that North Bay cannot meet its burden for having this Court issue a stay of the Bankruptcy Court trial pursuant to Fed. R. Bankr. P. 5011. North Bay cannot show it has a substantial possibility of success on the merits of the motion to withdraw the reference. It also cannot show it will be irreparably harmed if the stay is not granted. Conversely, Debtor will be harmed by the stay. Finally, it would be against the public interest for the Court to grant North Bay's stay request, because it would represent an unprecedented revocation of a bankruptcy court's reference once trial has already commenced, based upon nothing more than fear of how the bankruptcy court may rule. North Bay's Motion should therefore be denied.

WHEREFORE Debtor respectfully requests an order of this Court (i) denying the Motion and (ii) granting such other and further relief as the Court deems just and proper.

s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Debtor*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on April 4, 2016, on all counsel or parties of record on the Service List below.

s/ Peter D. Russin
Peter D. Russin, Esquire

## SERVICE LIST

Kenneth G.M. Mather, Esq.
kmather@gunster.com
Gunster, Yoakley & Stewart, P.A.
401 E. Kennedy Blvd.
Suite 2500
Tampa, FL 33602
Telephone: (813) 222-6630
Attorney for Lexi North Bay, LLC

Raymond V. Miller, Esq.
rmiller@gunster.com
Michael B. Green, Esq.
mgreen@gunster.com
Gunster, Yoakley & Stewart, P.A.
Brickell World Plaza
600 Brickell Avenue
Suite 3500
Miami, FL 33131
Telephone: (305) 376-6048
Attorney for Lexi North Bay, LLC

Paul D. Friedman, Esq.
paul@friedmanfrost.com
Todd R. Friedman, Esq.
todd@friedmanfrost.com
Friedman & Frost, P.L.
1111 Brickell Avenue
Suite 2050
Miami, FL 33131
Telephone: (305) 377-4100
Attorney for NBV Loan Acquisition, LLC